## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | Case No. 25-35121 |
| **CITY PARK STORAGE VENTURE, LP** | § § | Chapter 11 |
| Debtor. | § § § | |

## SECOND AMENDED PLAN OF REORGANIZATION

City Park Storage Venture, LP, the debtor-in-possession in the above-captioned bankruptcy case, proposes this *Second Amended Plan of Reorganization*.

### TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Definitions | 2 |
| II. | Debtor Background/Financial Information | 3 |
| III. | Summary of Plan | 7 |
| IV. | Treatment of Administrative Expense Claims and Priority Tax Claims | 9 |
| V. | Classification and Treatment of Claims and Interests | 10 |
| VI. | Allowance and Disallowance of Claims | 13 |
| VII. | Treatment of Executory Contracts and Unexpired Leases | 13 |
| VIII. | Means for Implementation of the Plan | 13 |
| IX. | Effect of Confirmation and Releases | 13 |
| X. | Discharge | 14 |
| XI. | Reservation of Rights | 14 |
| XII. | Default | 14 |
| XIII. | General Provisions | 15 |
| XIV. | Notices | 17 |

# I.  DEFINITIONS

The following terms, when used in the Plan, shall, unless the context otherwise requires, have the following meanings, respectively:

1. "Administrative Expense Claim" shall mean a Claim that is allowed pursuant to Section 503 of the Bankruptcy Code.

2. "Allowed Claim" shall mean, any Claim (a) that has been listed by the Debtor in their Schedules D or Schedules E/F as liquidated in amount and not "disputed" or "contingent" and that has not been supplanted by a proof of claim filed by the scheduled Creditor in the Chapter 11 Case, (b) that is established by a timely filed proof of claim in the Chapter 11 Case to which no objection or request for estimation has been filed on or before the Effective Date, or (c) that has been allowed by a final order of the Court.

3. "Allowed _____ Claim" shall mean an Allowed Claim of the type described.

4. "Bankruptcy Code" or the "Code" shall mean Title 11 of the United States Code.

5. "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

6. "Chapter 11 Case" shall mean the above captioned and styled case proceeding under Chapter 11 of the Bankruptcy Code commenced by the Debtor in this Court

7. "Claim" shall mean any claim (as that term is defined in 11 U.S.C. § 101(5)) against the Debtor.

8. "Claims Bar Date" shall mean the deadline for filing Claims against the Debtor in the Chapter 11 Case, which was November 7, 2025, for non-governmental claimants, and is February 25, 2026, for governmental claimants.

9. "Class" shall mean any class into which Claims are classified in this Plan.

10. "Confirmation" shall mean the Court's entry of an order confirming the Plan.

11. "Court" shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over the Chapter 11 Case.

12. "Creditor" shall have the same meaning as its given by 11 U.S.C. § 101(10).

13. "Debtor" shall mean City Park Storage Venture, LP.

14. "Disputed Claim" shall mean a Claim, or any portion thereof: (a) which is listed in the Schedules as disputed, contingent or unliquidated; or (b) as to which (i) a Proof of Claim has been filed, (ii) an objection, or request for estimation, has been timely filed (and not withdrawn)

2

by the Debtor or any other party-in-interest, and (iii) no final order has been entered thereon.

15. "Effective Date" shall mean the earlier of April 6, 2026, or the date upon which Debtor has funds sufficient to make the payments contemplated by this Plan.

16. "Petition Date" shall mean August 29, 2025, the date Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

17. "Plan" shall mean this *Second Amended Plan of Reorganization* in its present form or as it may be amended, altered, varied, or modified from time to time.

18. "Priority Claim" shall mean a Claim entitled to priority under 11 U.S.C. § 507(a)(3)–(8).

19. "Reorganized Debtor" shall mean the Debtor, as reorganized pursuant to this Plan.

20. "IRS" shall mean the United States Internal Revenue Services.

21. "Secured Claim" shall mean the Claim of any Creditor secured by a lien or liens on property of a Debtor, which lien and/or liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with 11 U.S.C. § 506.

22. "Subchapter V Trustee" shall mean Chris Quinn, the appointed Subchapter V trustee in the Chapter 11 Case, prior to the case being converted to a Single Asset Real Estate case.

23. "Unsecured Claim" shall mean a claim that is not an Administrative Claim, a Priority Claim, or a Secured Claim.

## II. DEBTOR BACKGROUND/FINANCIAL INFORMATION

### 2.1 Legal Structure and Ownership

Debtor is a limited partnership. City Park Storage GP, LLC (the "General Partner") is the general partner and owns 30% of Debtor. The remaining 70% of Debtor is owned by various limited partners (the "Limited Partners").[1] Debtor is the owner of a 4.5-acre tract of partially developed land in the Houston area (the "Property"). Debtor intends to build a storage facility on the Property (the "Project").

The General Partner manages the Debtor and is not compensated. Post-Confirmation, the General Partner will continue to manage the Reorganized Debtor, to the extent the Property is not sold pursuant to the Plan, without compensation.

---

[1] A full list of Limited Partners and their various ownership amounts can be found on Debtor's List of Equity Security Holders [Doc. No. 18].

**2.2** **History and Nature of Debtor' Business**

Debtor was formed on March 29, 2021, for the sole purpose of completing the Project.

Debtor obtained a loan in the amount of $8,004,000 to complete the Project from Capital Fund 1, LLC (the "Construction Loan"). The Construction Loan, however, was never funded, except for an unrequested protective advance in the amount of $44,583.18 (the "C2R Debt") that was used to pay real estate taxes. The C2R Debt was later transferred to C2R Secured Funding, LLC ("C2R Funding").

Debtor has completed about 25% of the construction on the Project. That construction includes grading and a concrete slab and masonry first floor walls. Unfortunately, work on the Project ceased when Capital Fund 1 refused to fund the Construction Loan.

Without the ability to draw on the Construction Loan, Debtor could not complete the Project, and was also unable to pay its general contractor, Landmark Interest Corporation ("Landmark"), for its work on the Project. Landmark subsequently brought suit against the Debtor to recover the amounts that it was owed and was ultimately awarded a judgment in the aggregate amount of $2,109,691.14 (the "Judgment"). The Judgment also ordered that Landmark's mechanic's and materialman's lien on the Property be judicially foreclosed, and such judicial foreclosure was scheduled for September 2, 2025. The Judgment was transferred to C2R Secured Debt Fund I, LP ("C2R Secured Debt," and collectively with C2R Funding, "C2R") prior to the scheduled judicial foreclosure.

Debtor filed its voluntary petition under the Subchapter V of Chapter 11 of the Bankruptcy Code on August 29, 2025 [Doc. No. 1].

On November 13, 2025, Debtor converted the Chapter 11 Case from Subchapter V to a Single Asset Real Estate ("SARE") case [Doc. No. 35].

**2.3** **Significant Events During the Chapter 11 Case**

Debtor's Schedules of Assets and Liabilities were filed and are available at Doc. No. 16 (the "Schedules"), and Debtor's Statement of Financial Affairs was also filed and is available at Doc. No. 17 (the "SOFA").

The Subchapter V Trustee was appointed on September 9, 2025 [Doc. No. 13].

On September 24, 2025, an Application to Employ Kean Miller as Debtor's counsel was filed [Doc. No. 15] (the "Application"). The Court entered an Order granting the Application on October 21, 2025 [Doc. No. 24].

The Debtor filed its first monthly operating reports on October 17, 2025 [Doc. No. 23]. As of the filing of This Plan, Debtor is current with filing its monthly operating reports.

On October 24, 2025, C2R filed a motion for relief from stay (the "Motion for Stay Relief")

4

in which it alleges, among other things, that Debtor should have to comply with the provisions of the Bankruptcy Code that pertain to a single asset real estate debtor [Doc. No. 26].

On October 29, 2025, Debtor filed an Application to Employ Grandstone Storage Investment Sales, LLC as Real Estate Broker [Doc. No. 29], and the Court entered an Order granting the Application on November 25, 2025 [Doc. No. 66].

On November 13, 2025, the Court entered an order granting the Motion for Stay Relief [Doc. No. 34]. Also on November 13, 2025, Debtor filed: (i) an *Amended Petition* electing to proceed as a single asset real estate ("SARE") debtor [Doc. No. 35]; (ii) an objection to C2R's Motion for Stay Relief [Doc. No. 38]; (iii) a *Motion to Reconsider the Motion for Stay Relief* [Doc. No. 36]; and (iv) an *Amended Motion to Reconsider the Motion for Stay Relief* [Doc. No. 37].

On November 14, Debtor filed its *Plan of Reorganization* (the "Original Plan") [Doc. No. 40] and accompanying *Disclosure Statement* [Doc. No. 41].

A hearing on the *Amended Motion to Reconsider* was held on November 24, 2025. The Court granted the Motion to Reconsider and vacated its previous Order lifting the automatic stay [Doc. No. 64], but indicated that the Original Plan, as filed, is unconfirmable as a matter of law. The Court, therefore, directed the Debtor to file a confirmable Plan of Reorganization by Friday, November 28, 2025. The Court also scheduled a hearing on the Motion for Stay Relief for December 3, 2025, to determine if the amended plan had a reasonable possibility of being confirmed within a reasonable time.

On November 26, 2025, Debtor filed an Amended Plan of Reorganization (the "First Amended Plan") [Doc. No. 67] and an Amended Disclosure Statement [Doc. No. 68].

After the December 3, 2025, hearing on the Motion for Stay Relief, the Court set a hearing to consider whether the first Amended Plan should be confirmed for January 9, 2026, and indicated that it would also take up the Motion for Relief from Stay on that date.

Contemporaneous with this Plan, the Debtor is filing a *Second Amended Disclosure Statement* and an *Objection to Proof of Claim Number 1*.

**2.4    Historical Financial Information**

Debtor has never generated any revenue. Debtor obtained the Construction Loan for $8,004,000 but only amount arguably owed under the Construction Loan is $44,583.18 from an unsolicited protective advance used to pay property taxes. A retainer of $6,800 was paid to Debtor's counsel prior to the filing of the Chapter 11 Case. That money was paid by a member of the General Partner. To the extent that expenses, such as insurance premiums, have arisen during the pendency of the Chapter 11 Case, they have been paid by a member of the General Partner through advances into the Debtor's DIP account. Such expenses are noted on Debtor's monthly

operating reports, which are attached to the Disclosure Statement as **Exhibit A**.

## 2.5   Summary of Assets and Liabilities

Debtor's only asset is the Property, which has an estimated value, if sold as raw land, of at least $4,000,000.00. The Property purportedly secures two different obligations to the same party, C2R, as assignee of the original creditors. C2R alleges that it has a first position materialmen's lien in the amount of 2,296,549.94, and a second position deed of trust in the amount of $52,338.11.

On December 23, 2025, Debtor received a letter from City Park Commercial Association, Inc.'s counsel, asserting that City Park Commercial Association (the "Association") has a secured claim against the Property in the amount of $44,912.58. The Debtor was not aware of the debto owed to the Association prior to December 23, 2025; therefore, the Debtor did not schedule the Association's asserted claim, and did not treat such claim in the Original Plan or First Amended Plan. Likewise, the Association was not aware of this Chapter 11 Case, and did not have an opportunity to vote on the Original Plan or the First Amended Plan.

On January 6, 2026, proofs of claim 5, 6, and 7 were filed for property taxes. These claims total $23,464.25.

Debtor's counsel has an Administrative Expense Claim for services provided in the Chapter 11 Case, which Debtor estimates will be approximately $150,000. Chris Quinn, who acted as the Subchapter V trustee prior to the Chapter 11 Case converting to a Single Asset Real Estate case, also has an Administrative Expense Claim, which the Debtor estimates will be approximately $3,000.

Debtor is unaware of any other Claims against it. There have been no proofs of claims filed for any other Administrative, Secured, or Unsecured Claim.

## 2.6   Executory Contracts & Leases

To the best of Debtor's knowledge, it has no executory contracts or leases to assume. To the extent that any executory contracts and leases exist, such executory contracts and leases will be deemed rejected as of the Effective Date.

## 2.7   Liquidation Analysis

To confirm this Plan, the Court must find that all holders of Allowed Claims who do not accept this Plan will receive at least as much under this Plan as such holders would receive in a liquidation under Chapter 7 of the Bankruptcy Code ("Chapter 7 Liquidation"). A Liquidation Analysis is attached to the Disclosure Statement as **Exhibit B**.

Debtor has no unsecured Creditors. Debtor only has secured Creditors, and they will receive at least as much as they would under a Chapter 7 Liquidation because their recovery is tied to the value of the collateral. Because the collateral is worth more than the Secured Claims, the secured Creditors will be paid in full in a Chapter 7 Liquidation. This Plan, therefore, calls for the

secured Creditors to be paid in full, and with interest and cost allowable under applicable law. Therefore, the best interest of creditors test set forth in Section 1129(a)(7) of the Bankruptcy Code is satisfied.

**2.8     Feasibility/Projections**

Debtor must show that it will have enough cash over the life of the Proposed Plan to make required Proposed Plan payments and operate the Reorganized Debtor's business. The Proposed Plan proposes paying off its Creditors either: (a) upon the sale of the Property; or (b) from an infusion of capital from new investors.

The Reorganized Debtor will fund the Proposed Plan either through: (a) the sale of the Property to a third-party interested in completing the Project; or (b) an infusion of capital from new investors. Debtor does not anticipate there being any Unsecured Claims other than Administrative Expense Claims for Debtor's counsel and the Subchapter V Trustee. The value of the Property is at least 73.9%[2] higher than the Secured Claims. Stated differently, there is a 42.5%[3] equity cushion in the Property to protect the secured Creditors' interests. Because of the large equity cushion, there is a high likelihood that Debtor will be able to either: (a) sell the Property or (b) raise new capital at an amount sufficient to pay the Secured Claims in full. Accordingly, the Proposed Plan satisfies the "feasibility" requirement under Section 1129(a)(11) of the Bankruptcy Code.

**2.9     Avoidable Transfers**

Debtor believes that there are avoidable transfers to pursue in the Chapter 11 Case, including against C2R, but has not yet completed its investigation with regard to potentially avoidable prepetition transactions. Debtor anticipates completing its investigation within sixty (60) days after the Effective Date. If you received payment or other transfer of property that is fraudulent, preferential, or otherwise avoidable under the Bankruptcy Code, the Debtor may seek to avoid such transfer.

The Debtor also reserves the right to assert claims against C2R and its members and/or agents for, among other things: (i) tortious interference with business opportunity; (ii) tortious interference with contract(s); (iii) tortious interference with business relationship(s); and (iv) breach of fiduciary duty.

### III.     SUMMARY OF PLAN

This Chapter 11 Case was commenced under Subchapter V of the Bankruptcy Code but has now converted to a Single Asset Real Estate ("SARE") case. SARE cases do not require anything from a proposed plan of reorganization beyond what is typically required by a Chapter 11 Plan.

---

[2] Debtor believes the property is worth north $5 million but will use a $4 million valuation to be extremely conservative. (Value – secured claims) / secured claims = (4,000,000-2,300,000)/2,300,000 = 73.9%.

[3] (Value – secured claims) / Value = Equity Cushion: (4,000,000-2,300,000)/4,000,000 = 42.5%.

Under the Proposed Plan, the Reorganized Debtor intends to distribute cash generated from either: (a) the sale of the Property or (b) an infusion of capital from new investors to holders of Allowed Claims. To the extent that the Property is sold to a third-party, the proceeds from the sale remaining after payment of Allowed Claims will be distributed, *pro rata*, to the Debtor's Equity Interest Holders who comprise Class 2 under the Proposed Plan. The Proposed Plan provides for the treatment of Claims and interests as follows, and as more fully described herein:

- Two classes of Secured Claims: **Class 1-1** – C2R Secured Debt Fund 1, LP's claim has been objected to, and will be paid either as a Class 2 claim or in full upon the Effective Date from either: (i) the sale of the Property; or (ii) upon receipt of capital from new investors; **Class 1-2** – the amount of C2R Secured Debt I, LP's claim has been objected to, and will be paid in full upon the Effective Date from either: (i) the sale of the Property; or (ii) upon receipt of capital from new investors; **Class 1-3** – City Park Commercial Association, Inc. will be paid $22,460 without interest on the Effective Date.

- General Unsecured Claims: **Class 2** – The claims that make up this class shall be paid a *pro rata* share of any funds available after the administrative expenses and creditors with secured claims have been paid in full.

- Equity Interest: **Class 3** – The General Partner owns about 30% of the Debtor's equity interest and the Limited Partners own the remaining 70% of the Debtor's interest. The members of this class will maintain their current ownership interest in the Reorganized Debtor, and to the extent that the Property is sold to a third-party, the proceeds from the sale remaining after payment of Allowed Claims will be distributed, *pro rata*, to the Debtor's Equity Interest Holders who comprise Class 3 under the Proposed Plan.

**All holders of Claims should refer to Articles IV and V of this Plan for information regarding the precise treatment of their claims.**

In addition, the Debtor anticipates that it will owe the following Administrative Expense Claims (subject to allowance by the Court), which will be paid in full upon the later of the Effective Date or Court approval, or under such other terms as agreed to by the holder of the Allowed Administrative Expense Claim:

- Kean Miller LLP, attorney for the Debtor, in the estimated amount of **$150,000** (estimated unpaid fees);

- Chris Quinn, Subchapter V Trustee, in the estimated amount of **$3,000**.[4]

**ALL CLAIMS FOR ADMINISTRATIVE EXPENSES MUST BE NOTICED FOR**

---

[4] This assumes that the Subchapter V Trustee was involved in this matter for 3 months and billed an average of $1,000 per month.

**HEARING AND ARE SUBJECT TO REVIEW AND APPROVAL BY THE BANKRUPTCY COURT.**

The last day to file an application for allowance of an Administrative Expense Claim is the twenty-eighth (28th) calendar day after Confirmation. Any application for allowance of an Administrative Claim that is not timely filed shall be deemed waived and barred as a Claim against the Debtor.

## IV. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

Under Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and priority tax claims are not in classes; therefore, the holders of such Allowed Claims are not entitled to vote on the Proposed Plan.

### 4.1 Administrative Expense Claims

| **Administrative Expense Claimant** | **Treatment of Administrative Expense Claim** |
|---|---|
| **Kean Miller LLP, Counsel for the Debtor** | The Debtor estimates that the Allowed Administrative Expense Claim of Kean Miller LLP will be $150,000.00. This claim will be paid in full on the later of the Effective Date or Court approval, or under such other terms as may be agreed upon by Kean Miller and the Debtor. <br><br> For avoidance of doubt, this Claim will be paid in full before the Allowed Unsecured Claims, to the extent any exist, receive any distribution under the Proposed Plan. |
| **Chris Quinn, Subchapter V Trustee** | The Debtor estimates that the Administrative Expense Claim of Chris Quinn will be $3,000.00. This claim will be paid in full on the later of the Effective Date or Court approval, or under such other terms as may be agreed upon by the Subchapter V Trustee and the Debtor.[5] |

---

[5] The Debtor are currently paying the Subchapter V Trustee monthly payments in the amount of $1,000. To the extent such monthly payments do not pay the Subchapter V Trustee's claim in full, the Subchapter V Trustee will be paid as set forth in the Proposed Plan.

|  | For avoidance of doubt, this Claim will be paid in full before the Allowed Unsecured Claims, to the extent any exist, receive any distribution under the Proposed Plan. |
|---|---|

## 4.2     Priority Claims

Priority Tax Claims are also Secured Claims under 506 of the Bankruptcy Code and are entitled to first-priority as provided under applicable non-bankruptcy law. All Priority Tax Claims for taxes due in 2025, or for previous years, will be paid in full upon the Effective Date. Any and all ad valorem tax liens securing prepetition and postpetition taxes shall be retained until all such taxes are paid in full. The Reorganized Debtor shall keep current all postpetition ad valorem tax liabilities (2025 and subsequent years) in the ordinary course, prior to delinquency, with any default subject to applicable nonbankruptcy law, including immediate collection actions in state court, without further notice of order from the Bankruptcy Court. No Administrative Expense Claim or a request for payment is required for payment of any postpetition taxes.

## V.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan places claims and equity interests in various classes and describes the treatment of each Class as set forth below. The Plan also states whether each Class of claims or equity interests is impaired or unimpaired. A claim or equity interest is impaired if the Plan alters the legal, equitable or contractual rights to which the claimants or equity holders are otherwise entitled. If the Plan is confirmed, each creditor's and equity holder's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only creditors holding Allowed Claims may vote. A Class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a Class of equity interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed equity interest holders that actually vote, vote in favor of the Plan. A Class that is not impaired is deemed to accept the Plan.

The claims and equity interests shall be treated as follows under the Plan:

## 5.1     Secured Claims – Classes 1-1 through 1-3:

| Class #/Claimant | Impairment | Description and Treatment |
|---|---|---|
| **Class 1-1 – C2R Secured Debt Fund 1, LP** | Yes | Claim Amount: $2,296,549.94<br><br>This Claim is purportedly secured by a materialman's lien against the Property. Because this Claim purportedly arose from a materialman's lien and a judgment for the work performed and secured by such |

10

| | | |
|---|---|---|
| | | materialman's lien, as opposed to a promissory note and other documents evidencing a loan, there was no contract that required the Debtor to make prepetition payments, no default related to the Debtor's failure to make regularly scheduled payments, or acceleration of amounts due under a promissory note or other contract. Accordingly, there is nothing to cure with regard to this Claim.<br><br>Contemporaneous with this Plan, Debtor is filing an objection to the proof of claim filed by C2R Secured Debt Fund 1, LP. Debtor asserts the claim is wholly unsecured and should be treated as a Class 2 claim. Alternatively, the Debtor asserts that any alleged lien held by C2R is avoidable pursuant to Section 544 of the Bankruptcy Code.<br><br>In the event that this Claim is determined to be secured, it shall be treated as follows:<br><br>This Claim will be paid in full, with interest accruing at 8.75% (prime + 2%) annually from the Petition Date. This payment will be made on the Effective Date. |
| **Class 1-2 – C2R Secured Funding, LLC** | Yes | Claim Amount: $52,338.11<br><br>This Claim is secured by a Deed of Trust against the Property. This Claim arose from an unsolicited advance to pay property taxes. Because there were never any draws on the Construction Loan, there were no prepetition payments due on the Petition Date, and no default under the applicable loan documents. Moreover, the debt comprising this Claim was never accelerated prior to the Petition Date, and no demand for payment was ever made on the Debtor. Accordingly, there is nothing to cure with regard to this Claim.<br><br>This Claim will be paid in full upon the Effective Date. For the avoidance of doubt, the terms of the Loan Agreement and Promissory Note assigned to C2R and attached to Proof of Claim #2 shall remain in effect and shall in no way be modified by this Amended Plan. For the avoidance of any doubt, C2R may exercise all of its rights contained in the Loan |

11

| | | |
|---|---|---|
| | | Agreement and Promissory Note or available to it by applicable law on the Effective Date, including, without limitation, seeking non-judicial foreclosure pursuant to the Deed of Trust that secures this Claim.<br><br>This Claim will be paid in full with interest accruing at 8.75% (prime + 2%) annually from the Petition Date. This payment will be made on the Effective Date. |
| **Class 1-3 – City Park Commercial Association, Inc.** | Yes | Claim Amount: $44,912.58<br><br>This Claim consists of fees owed to a commercial association that purportedly run with the Property.<br><br>This Claim will be paid $22,460 without interest on the Effective Date. |

### 5.2   Unsecured Claims

| **Class #/Claimant** | **Impairment** | **Description and Treatment** |
|---|---|---|
| **Class 2 – General Unsecured Creditors** | Yes | The claims that make up this class shall be paid a *pro rata* share of any funds available after the administrative expenses and creditors with secured claims have been paid in full. The claims in this class are not entitled to post-petition interest. |

### 5.3   Equity Interest – Class 2

| **Class #/Claimant** | **Impairment** | **Description and Treatment** |
|---|---|---|
| **Class 3 – Equity Holders** | No | The General Partner owns about 30% of the Debtor's equity interest and the Limited Partners own the remaining 70% of the Debtor's interest. The members of this class will maintain their current ownership interest in the Reorganized Debtor, and to the extent that the Property is sold to a third-party, the proceeds from the sale remaining after payment of Allowed Claims will be distributed, *pro rata*, to the Debtor's Equity Interest Holders who comprise Class 3 under this Plan |

**5.4   Voting Procedures** – Classes 1-1, 1-2, and 1-3 are impaired and entitled to vote. Upon approval of the *Second Amended Disclosure Statement*, Debtor will solicit votes from each of these classes. A copy of the *Seconded Amended Disclosure Statement,* this Plan, a ballot specific to

each class, and the Court's order approving such documents will be transmitted to the claimants of each class as directed by the Court.

Ballots shall be returned to the undersigned counsel either by email or first-class U.S. mail.

### VI. ALLOWANCE AND DISALLOWANCE OF CLAIMS

**6.1 Delay of Distribution on Disputed Claim/Escrow** – No distribution will be made on account of a Disputed Claim unless such Claim is allowed by a final order of the Court.

**6.2 Settlement of Disputed Claims** – The Debtor will have the power and authority to settle and compromise a Disputed Claim with Court approval and in compliance with Rule 9019 of the Bankruptcy Rules.

**6.3 Treatment Once Allowed** – If a Disputed Claim is Allowed in accordance with this Plan, it shall receive treatment in accordance with the classes set forth in Article V herein.

### VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

There were no executory contracts and unexpired leases listed on the Debtor' Schedule G [Doc. No. 16]. All other executory contracts to which the Debtor are a party are being rejected upon Confirmation.

### VIII. MEANS FOR IMPLEMENTATION OF THIS PLAN

The Reorganized Debtor will continue to operate its business and is authorized to take any actions it deems necessary to operate same. The Plan will be funded from: (a) the sale of the Property to a third-party interested in completing the project; or (b) an infusion of capital from new investors. The Reorganized Debtor will pursue both funding options concurrently, and no later than the day prior to the Effective Date, shall have the funds sufficient to make all payments due on the Effective Date.

The Reorganized Debtor shall provide the US Trustee with report of all distributions made pursuant to the Plan within thirty (30) days of the Effective Date.

### IX. EFFECT OF CONFIRMATION AND RELEASES

All consideration provided pursuant to this Plan shall be in exchange for and in complete satisfaction and release of all Claims, of any nature whatsoever, against the Debtor and Reorganized Debtor and/or any property of the Debtor, the Reorganized Debtor, or their bankruptcy estates. Notwithstanding the foregoing, the Reorganized Debtor's obligations specifically provided for under this Plan shall not be released and will survive Confirmation. Upon Confirmation, all property of the Debtor and the Reorganized Debtor, whether tangible or intangible, will be free and clear of all Claims, liens, charges, and any other encumbrances, except as provided in the Plan. The provisions of the Plan shall bind all Creditors of the Debtor, even if the Creditor did not accept this Plan. The rights and obligations of any entity affected under this

Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

## X.     DISCHARGE

Upon Confirmation, the Debtor will be discharged from any debt that arose before Confirmation, subject to the occurrence of the Effective Date, to the extent specified in Section 1141(d) of the Bankruptcy Code.

## XI.    RESERVATION OF RIGHTS

Prior to the Effective Date, no provision of this Plan, nor any statement or provision contained herein, nor the taking of any action with respect to the Plan by the Debtor shall: (i) be deemed to be an admission against interest; and (ii) or be deemed to be a waiver of any rights which the Debtor might have against a Creditor. If the Effective Date does not occur, neither the Plan nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this Chapter 11 Case.

**ALL CLAIMS AND CAUSES OF ACTION THAT ARE NOT SPECIFICALLY RELEASED UNDER THIS PLAN, INCLUDING, BUT NOT LIMITED TO, CLAIMS FOR THE AVOIDANCE AND RECOVERY OF PRE-PETITION TRANSFERS UNDER CHAPTER 5 OF THE BANKRUPTCY CODE, ARE HEREBY RESERVED TO BE PROSECUTED BY THE REORGANIZED DEBTOR POST-CONFIRMATION.**

## XII.   DEFAULT

Failure to pay all Allowed Claim on the Effective Date shall constitute an event of default as to such Claim.  The holder of any Claim may exercise any and all of its contractual and/or legal remedies should the Debtor default under this Plan.  The Reorganized Debtor shall retain all of its state law rights and remedies to defend against any action taken by the holder of a Claim after an event of default.

## XIII.  GENERAL PROVISIONS

**13.1** **Retention of Jurisdiction by the Court** – The Court shall retain jurisdiction of this Chapter 11 Case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan, including adjudicating any adversary proceedings or contested matters related to defaults under the Plan; (ii) to rule on any modification of the Plan proposed under Section 1193 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation to professionals and other Administrative Claims; (iv) to resolve all issues regarding Claims objections, and any issues arising from the assumption/rejection of executory contracts or unexpired leases; and (v) to adjudicate any cause of action which the Debtor may own, including preference and fraudulent transfer causes of action.

**13.2** **Claims Bar Date** – Claims which are not actually filed by the Claims Bar Date will be forever barred and/or released from assertion against the Debtor, the Reorganized Debtor, or property of their bankruptcy estate, unless the Claim is listed on the Debtor' Schedules and is not listed as disputed, contingent, or unliquidated as to amount and as to which no objection has been filed.

**13.3** **Corporate Governance** – The Reorganized Debtor shall continue to be governed in accordance with their pre-petition organizational documents.

**13.4** **Distributions** – If any distribution is returned undeliverable or remains unclaimed after thirty (30) days of the distribution date, no further distributions to the applicable holder shall be made unless and until the Reorganized Debtor, as distribution agent, is notified in writing of such holder's then-current address, and after the distribution agent makes a reasonable attempt to contact the claim holder. Such holders of returned and/or unclaimed distributions shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Any funds that are returned to the distribution agent or not timely presented for payment within thirty days of the issue date, shall be used by the distribution agent to make additional distributions pursuant to the terms of the Plan.

**13.5** **Post-Confirmation Automatic Stay** – The automatic stay, as provided for under Section 362 of the Bankruptcy Code, will remain in place until the Effective Date.

**13.6** **Effective Date, Substantial Consummation and Final Decree** – The Debtor shall file with the Court a Notice of Occurrence of the Effective Date on the Effective Date or as soon as practicable thereafter.

Once the Debtor' bankruptcy estates' have been fully administered, as provided in Bankruptcy Rule 3022, the Debtor shall file a notice of substantial consummation with the Court along with a motion to obtain a final decree to close the Case. Alternatively, the Court may enter such a final decree on its own motion.

**13.7** **Applicable Law** – Unless a rule of law or procedure is supplied by Federal law, including

the Bankruptcy Code or the Bankruptcy Rules, the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**13.8** **Severability** – If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**13.9** **Successors & Assigns** – The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on and shall inure to the benefit or detriment of any heir, executor, successor or assign, officer, manager, director, agent, representative, beneficiary, or guardian, if any, of each entity.

[*Continued to Next Page.*]

## XIV.  NOTICES

Notices to the Debtor and Reorganized Debtor may be sent by United States first class mail to:

City Park Storage Ventures, LP
1925 Pearland Parkway
Pearland, TX 77581

With a copy by e-mail to:

Kean Miller LLP
c/o Lloyd A. Lim
711 Louisiana Street
Suite 1800
Houston, Texas 77002
Lloyd.Lim@KeanMiller.com


By: */s/* Paul W. Grohman
Name:
Dated: January 7, 2026

SUBMITTED BY:

KEAN MILLER LLP

By: */s/ Lloyd A. Lim*
Lloyd A. Lim
Texas State Bar No. 24056871
Lloyd.Lim@keanmiller.com
Rachel T. Kubanda
Texas State Bar No. 24093258
Rachel.Kubanda@keanmiller.com
711 Louisiana Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 844-3000
Telecopier: (713) 844-3030