## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | |
| | § | Case No. 25-35121 |
| **CITY PARK STORAGE VENTURE, LP** | § § | Chapter 11 |
| Debtor. | § § § | |

## THIRD AMENDED PLAN OF REORGANIZATION

City Park Storage Venture, LP, the debtor-in-possession in the above-captioned bankruptcy case, proposes this *Third Amended Plan of Reorganization*.

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Definitions | 2 |
| II. | Debtor Background/Financial Information | 3 |
| III. | Summary of Plan | 8 |
| IV. | Treatment of Administrative Expense Claims and Priority Tax Claims | 9 |
| V. | Classification and Treatment of Claims and Interests | 10 |
| VI. | Allowance and Disallowance of Claims | 13 |
| VII. | Treatment of Executory Contracts and Unexpired Leases | 13 |
| VIII. | Means for Implementation of the Plan | 14 |
| IX. | Effect of Confirmation and Releases | 14 |
| X. | Discharge | 14 |
| XI. | Reservation of Rights | 15 |
| XII. | Default | 15 |
| XIII. | General Provisions | 15 |
| XIV. | Notices | 17 |

## I.  DEFINITIONS

The following terms, when used in the Plan, shall, unless the context otherwise requires, have the following meanings, respectively:

1. "Administrative Expense Claim" shall mean a Claim that is allowed pursuant to Section 503 of the Bankruptcy Code.

2. "Allowed Claim" shall mean, any Claim (a) that has been listed by the Debtor in their Schedules D or Schedules E/F as liquidated in amount and not "disputed" or "contingent" and that has not been supplanted by a proof of claim filed by the scheduled Creditor in the Chapter 11 Case, (b) that is established by a timely filed proof of claim in the Chapter 11 Case to which no objection or request for estimation has been filed on or before the Effective Date, or (c) that has been allowed by a final order of the Court.

3. "Allowed _____ Claim" shall mean an Allowed Claim of the type described.

4. "Bankruptcy Code" or the "Code" shall mean Title 11 of the United States Code.

5. "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

6. "Chapter 11 Case" shall mean the above captioned and styled case proceeding under Chapter 11 of the Bankruptcy Code commenced by the Debtor in this Court

7. "Claim" shall mean any claim (as that term is defined in 11 U.S.C. § 101(5)) against the Debtor.

8. "Claims Bar Date" shall mean the deadline for filing Claims against the Debtor in the Chapter 11 Case, which was November 7, 2025, for non-governmental claimants, and is February 25, 2026, for governmental claimants.

9. "Class" shall mean any class into which Claims are classified in this Plan.

10. "Confirmation" shall mean the Court's entry of an order confirming the Plan.

11. "Court" shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over the Chapter 11 Case.

12. "Creditor" shall have the same meaning as its given by 11 U.S.C. § 101(10).

13. "Debtor" shall mean City Park Storage Venture, LP.

14. "Disputed Claim" shall mean a Claim, or any portion thereof: (a) which is listed in the Schedules as disputed, contingent or unliquidated; or (b) as to which (i) a Proof of Claim has been filed, (ii) an objection, or request for estimation, has been timely filed (and not withdrawn)

2

by the Debtor or any other party-in-interest, and (iii) no final order has been entered thereon.

15. "Effective Date" shall mean the earlier of March 16, 2026, or the date upon which Debtor has funds sufficient to make the payments contemplated by this Plan.

16. "Petition Date" shall mean August 29, 2025, the date Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

17. "Plan" shall mean this *Third Amended Plan of Reorganization* in its present form or as it may be amended, altered, varied, or modified from time to time.

18. "Priority Claim" shall mean a Claim entitled to priority under 11 U.S.C. § 507(a)(3)–(8).

19. "Reorganized Debtor" shall mean the Debtor, as reorganized pursuant to this Plan.

20. "IRS" shall mean the United States Internal Revenue Services.

21. "Secured Claim" shall mean the Claim of any Creditor secured by a lien or liens on property of a Debtor, which lien and/or liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with 11 U.S.C. § 506.

22. "Subchapter V Trustee" shall mean Chris Quinn, the appointed Subchapter V trustee in the Chapter 11 Case, prior to the Chapter 11 Case being converted to a Single Asset Real Estate case.

23. "Unsecured Claim" shall mean a claim that is not an Administrative Claim, a Priority Claim, or a Secured Claim.

## II.   DEBTOR BACKGROUND/FINANCIAL INFORMATION

**2.1   Legal Structure and Ownership**

Debtor is a limited partnership. City Park Storage GP, LLC (the "General Partner") is the Debtor's general partner and owns 30% of Debtor. The remaining 70% of Debtor is owned by various limited partners (the "Limited Partners").[1] Debtor is the owner of a 4.5-acre tract of partially developed land in the Houston area (the "Property"). Prior to the Petition Date, the Debtor intended to build a storage facility on the Property (the "Project").

The General Partner manages the Debtor and is not compensated. Post-Confirmation, the General Partner will continue to manage the Reorganized Debtor, and shall: (i) wind down the Debtor; and (ii) complete the administration of the Debtor's assets retained by the Debtor pursuant

---

[1] A full list of Limited Partners and their various ownership amounts can be found on Debtor's List of Equity Security Holders [Doc. No. 18].

to this Plan after the Property is (a) sold or (b) transferred the C2R Secured Funding, LLC, as set Article V of the Plan.

**2.2   History and Nature of Debtor' Business**

Debtor was formed on March 29, 2021, for the sole purpose of completing the Project.

Debtor obtained a loan in the amount of $8,004,000 to complete the Project from Capital Fund 1, LLC (the "Construction Loan"). The Construction Loan, however, was never funded, except for an unrequested protective advance in the amount of $44,583.18 (the "C2R Debt") that was used to pay real estate taxes. The C2R Debt was later transferred to C2R Secured Funding, LLC ("C2R Funding").

Debtor has completed about 25% of the construction on the Project. That construction includes grading, a concrete slab, and masonry first floor walls. Unfortunately, work on the Project ceased when Capital Fund 1 refused to fund the Construction Loan.

Without the ability to draw on the Construction Loan, Debtor could not complete the Project, and was also unable to pay its general contractor, Landmark Interest Corporation ("Landmark"), for its work on the Project. Landmark subsequently brought suit against the Debtor to recover the amounts that it was owed and was ultimately awarded a judgment in the aggregate amount of $2,109,691.14 (the "Judgment"). The Judgment also ordered that Landmark's mechanic's and materialman's lien on the Property be judicially foreclosed, and such judicial foreclosure was scheduled for September 2, 2025. The Judgment was transferred to C2R Secured Debt Fund I, LP ("C2R Secured Debt," and collectively with C2R Funding, "C2R") prior to the scheduled judicial foreclosure.

Debtor filed a voluntary petition for relief under the Subchapter V of Chapter 11 of the Bankruptcy Code on August 29, 2025 [Doc. No. 1].

On November 13, 2025, Debtor voluntarily converted the Chapter 11 Case from Subchapter V to a Single Asset Real Estate ("SARE") case [Doc. No. 35].

**2.3   Significant Events During the Chapter 11 Case**

Debtor's *Schedules of Assets and Liabilities* and *Statement of Financial Affairs* were timely filed and are available at Doc. No. 16 (the "Schedules") and Doc. No. 17 (the "SOFA").

The Subchapter V Trustee was appointed on September 9, 2025 [Doc. No. 13].

On September 24, 2025, an *Application to Employ Kean Miller* as Debtor's counsel was filed [Doc. No. 15] (the "Application"). The Court entered an Order granting the Application on October 21, 2025 [Doc. No. 24].

The Debtor filed its first monthly operating report on October 17, 2025 [Doc. No. 23]. As of the filing of This Plan, Debtor is current with filing its monthly operating reports.

On October 24, 2025, C2R filed a *Motion for Relief from Stay* (the "Motion for Stay Relief") in which it alleges, among other things, that Debtor should have to comply with the provisions of the Bankruptcy Code that pertain to a SARE debtor [Doc. No. 26].

On October 29, 2025, Debtor filed an *Application to Employ Grandstone Storage Investment Sales, LLC* as Real Estate Broker [Doc. No. 29], and the Court entered an Order granting the Application on November 25, 2025 [Doc. No. 66].

On November 13, 2025, the Court entered an order granting the Motion for Stay Relief [Doc. No. 34]. Also on November 13, 2025, Debtor filed: (i) an *Amended Petition* electing to proceed as a SARE debtor [Doc. No. 35]; (ii) an objection to C2R's Motion for Stay Relief [Doc. No. 38]; (iii) a *Motion to Reconsider the Motion for Stay Relief* [Doc. No. 36]; and (iv) an *Amended Motion to Reconsider the Motion for Stay Relief* [Doc. No. 37].

On November 14, Debtor filed its *Plan of Reorganization* (the "Original Plan") [Doc. No. 40] and accompanying *Disclosure Statement* [Doc. No. 41].

A hearing on the *Amended Motion to Reconsider* was held on November 24, 2025. The Court granted the Motion to Reconsider and vacated its previous Order lifting the automatic stay [Doc. No. 64], but indicated that the Original Plan, as filed, is unconfirmable as a matter of law. The Court, therefore, directed the Debtor to file a confirmable Plan of Reorganization by Friday, November 28, 2025. The Court also scheduled a hearing on the Motion for Stay Relief for December 3, 2025, to determine if the amended plan had a reasonable possibility of being confirmed within a reasonable time.

On November 26, 2025, Debtor filed an *Amended Plan of Reorganization* (the "First Amended Plan") [Doc. No. 67] and an *Amended Disclosure Statement* [Doc. No. 68].

After the December 3, 2025, hearing on the Motion for Stay Relief, the Court set a hearing to consider whether the first Amended Plan should be confirmed for January 9, 2026, and indicated that it would also take up the Motion for Relief from Stay on that date.

On January 7, 2025, the Debtor filed its *Second Amended Disclosure Statement* (the "Disclosure Statement") [Doc. No. 95] and *Second Amended Plan of Reorganization* (the "Second Amended Plan") [Doc. No. 96], and on January 12, 2026, the Court entered an Order setting a hearing to consider the Second Amended Plan of Reorganization for January 23, 2025 [Doc. No. 116].

On January 8, 2026, the Debtor filed its *Objection to Proof of Claim Number 1* [Doc. No. 103] and *Objection to Proof of Claim Number 2* [Doc. No. 106] (collectively, the "Claims Objections") seeking disallowance of the C2R's Secured Claims.

On January 22, 2026, C2R filed its *Objection to Confirmation of Plan* (the "Plan Objection") [Doc. No. 123], which requested that the Court deny confirmation of the Second Amended Plan.

5

On January 23, 2026, the Court held a hearing to consider the confirmation of the Second Amended Plan, during which, the Debtor and C2R announced on the record that they had reached a settlement that fully resolves: (i) the Claims Objections; (ii) the Plan Objection; and (iii) all other outstanding disputes between the Parties (the "Plan Settlement").

Following the Parties announcement of the Plan Settlement, the Court directed the Debtor to file an amended Plan of Reorganization and Confirmation Order that sets forth the terms of the Parties' agreement. Accordingly, the Plan was filed January 28, 2026, and incorporates the Plan Settlement as announced on the record on January 23, 2026.

On January 23, 2026, the Court entered an Order [Doc. No. 106] approving the Disclosure Statement on a final basis and setting a hearing to consider the confirmation of this Plan on January 29, 2026, at 9:30 a.m.

## 2.4   Historical Financial Information

Debtor has never generated any revenue. Debtor obtained the Construction Loan for $8,004,000, but the only amount arguably owed under the Construction Loan is $80,070.62 from unsolicited alleged "protective advances" used to pay property taxes. A retainer of $6,800 was paid to Debtor's counsel prior to the filing of the Chapter 11 Case. The retainer was paid by a member of the General Partner. To the extent that expenses, such as insurance premiums, have arisen during the pendency of the Chapter 11 Case, they have been paid by a member of the General Partner through advances into the Debtor's DIP account. Such expenses are noted on Debtor's monthly operating reports, which are attached to the Disclosure Statement as **Exhibit A**.

## 2.5   Summary of Assets and Liabilities

Debtor's only tangible asset is the Property, which is currently under contract for $3,200,000.00. A copy of the Purchase and Sale Agreement dated January 22, 2026, between the Debtor as Seller, and Capital Development, LLC, as Buyer (the "PSA"), is attached hereto as **Exhibit A**. The Property purportedly secures three different obligations, two to C2R, as assignee of the original creditors, and one to City Park Commercial Association, Inc. (the "Association"). C2R alleges that it has a first position materialmen's lien in the amount of $2,541,151.27, and a second position deed of trust in the amount of $80,183.40.

On December 23, 2025, Debtor received a letter from the Association's counsel, asserting that the Association has a secured claim against the Property in the amount of $44,912.58. The Debtor was not aware of the debt owed to the Association prior to December 23, 2025; therefore, the Debtor did not schedule the Association's asserted claim, and did not treat such claim in the Original Plan or First Amended Plan. Likewise, the Association was not aware of this Chapter 11 Case, and did not have an opportunity to vote on the Original Plan or the First Amended Plan. As set forth in Article V below, the Debtor and the Association have reached a settlement regarding the Association's claim against the Debtor and its bankruptcy estate.

On January 6, 2026, Proofs of Claim Nos. 5, 6, and 7 were filed for property taxes. These

claims total $23,464.25.

Debtor's counsel has an Administrative Expense Claim for services provided in the Chapter 11 Case, which Debtor estimates will be approximately $170,000. Chris Quinn, who acted as the Subchapter V trustee prior to the Chapter 11 Case converting to a SARE, also has an Administrative Expense Claim, which the Debtor estimates will be approximately $3,000.

Debtor is unaware of any other Claims against it. There have been no proofs of claims filed for any other Administrative, Secured, or Unsecured Claim.

### 2.6  Executory Contracts & Leases

To the best of Debtor's knowledge, it has no executory contracts or leases to assume. To the extent that any executory contracts and leases exist, such executory contracts and leases will be deemed rejected as of the Effective Date.

### 2.7  Liquidation Analysis

To confirm this Plan, the Court must find that all holders of Allowed Claims who do not accept this Plan will receive at least as much under this Plan as such holders would receive in a liquidation under Chapter 7 of the Bankruptcy Code ("Chapter 7 Liquidation"). The contemplated sale of the Property pursuant to the PSA is in an amount sufficient to pay all creditors in full, therefore, the best interest of creditors test set forth in Section 1129(a)(7) of the Bankruptcy Code is satisfied.

### 2.8  Feasibility/Projections

The sale of the Property pursuant to the PSA will generate sufficient proceeds to fund the Debtor's Plan obligations in full. Accordingly, the Proposed Plan satisfies the "feasibility" requirement under Section 1129(a)(11) of the Bankruptcy Code.

### 2.9  Avoidable Transfers

Debtor believes that there are avoidable transfers to pursue in the Chapter 11 Case but has not yet completed its investigation with regard to potentially avoidable prepetition transactions. Debtor anticipates completing its investigation within sixty (60) days after the Effective Date. If you received payment or other transfer of property that is fraudulent, preferential, or otherwise avoidable under the Bankruptcy Code, the Debtor may seek to avoid such transfer.

### III.  SUMMARY OF PLAN

This Chapter 11 Case was commenced under Subchapter V of the Bankruptcy Code but voluntarily converted to a SARE case. SARE cases do not require anything from a proposed plan of reorganization beyond what is typically required by a Chapter 11 Plan.

Under the Proposed Plan, the Reorganized Debtor intends to distribute cash generated from

7

the proceeds of sale of the Property pursuant to the PSA. After payment of Allowed Claims, all remaining sales proceeds will be distributed, *pro rata*, to the Debtor's Equity Interest Holders who comprise Class 3 under the Plan. The Plan provides for the treatment of Claims and interests as follows, and as more fully described herein:

- Three classes of Secured Claims: **Class 1-1** – C2R Secured Debt's claim will be paid in full upon the Effective Date from the proceeds of sale of the Property at closing pursuant to the PSA; **Class 1-2** –C2R Funding's claim will be paid in full upon the Effective Date from the proceeds of sale of the Property at closing pursuant to the PSA; **Class 1-3** – The Association's claims will be paid $22,460 without interest on the Effective Date from the proceeds of sale of the Property pursuant to the PSA.

- General Unsecured Claims: **Class 2** – The claims that make up this class shall be paid a *pro rata* share of any funds available after Allowed Clams and Allowed Administrative Expense Claims have been paid in full from the proceeds of sale of the Property pursuant to the PSA.

- Equity Interest: **Class 3** –The members of this class will maintain their current ownership interest in the Reorganized Debtor, and will receive a *pro rata* share of the sales proceeds from the sale of the Property pursuant to the PSA after all Allowed Clams and Allowed Administrative Expense Claims are paid in full.

**All holders of Claims should refer to Articles IV and V of this Plan for information regarding the precise treatment of their claims.**

In addition, the Debtor anticipates that it will owe the following Administrative Expense Claims (subject to allowance by the Court), which will be paid in full upon the later of the Effective Date or Court approval, or under such other terms as agreed to by the holder of the Allowed Administrative Expense Claim:

- Kean Miller LLP, attorney for the Debtor, in the estimated amount of **$170,000** (estimated unpaid fees);

- Chris Quinn, Subchapter V Trustee, in the estimated amount of **$3,000**.[2]

**ALL CLAIMS FOR ADMINISTRATIVE EXPENSES MUST BE NOTICED FOR HEARING AND ARE SUBJECT TO REVIEW AND APPROVAL BY THE BANKRUPTCY COURT.**

The last day to file an application for allowance of an Administrative Expense Claim is the twenty-eighth (28th) calendar day after Confirmation. Any application for allowance of an Administrative Claim that is not timely filed shall be deemed waived and barred as a Claim against

---

[2] This assumes that the Subchapter V Trustee was involved in this matter for 3 months and billed an average of $1,000 per month.

the Debtor.

## IV. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

Under Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and priority tax claims are not in classes; therefore, the holders of such Allowed Claims are not entitled to vote on the Proposed Plan.

### 4.1 Administrative Expense Claims

| **Administrative Expense Claimant** | **Treatment of Administrative Expense Claim** |
|---|---|
| **Kean Miller LLP, Counsel for the Debtor** | The Debtor estimates that the Allowed Administrative Expense Claim of Kean Miller LLP will be $170,000.00. This claim will be paid in full on the later of the Effective Date or Court approval, or under such other terms as may be agreed upon by Kean Miller and the Debtor.<br><br>For avoidance of doubt, this Claim will be paid in full before Allowed Unsecured Claims, to the extent any exist, receive any distribution under the Proposed Plan. |
| **Chris Quinn, Subchapter V Trustee** | The Debtor estimates that the Administrative Expense Claim of Chris Quinn will be $3,000.00. This claim will be paid in full on the later of the Effective Date or Court approval, or under such other terms as may be agreed upon by the Subchapter V Trustee and the Debtor.[3]<br><br>For avoidance of doubt, this Claim will be paid in full before the Allowed Unsecured Claims, to the extent any exist, receive any distribution under the Proposed Plan. |

---

[3] The Debtor are currently paying the Subchapter V Trustee monthly payments in the amount of $1,000. To the extent such monthly payments do not pay the Subchapter V Trustee's claim in full, the Subchapter V Trustee will be paid as set forth in the Proposed Plan.

**4.2     Priority Claims**

Priority Tax Claims are also Secured Claims under 506 of the Bankruptcy Code and are entitled to first-priority as provided under applicable non-bankruptcy law.  All Priority Tax Claims for taxes due in 2025, or for previous years, will be paid in full upon the Effective Date. Such taxes shall be paid with statutory postpetition interest accruing as of February 1, 2026 until paid in full in accordance with applicable nonbankruptcy law. Any and all ad valorem tax liens securing prepetition and postpetition taxes shall be retained until all such taxes are paid in full. The Reorganized Debtor shall keep current all postpetition ad valorem tax liabilities (2026 and subsequent years) in the ordinary course, prior to delinquency, with any default subject to applicable nonbankruptcy law, including immediate collection actions in state court, without further notice of order from the Bankruptcy Court. No Administrative Expense Claim or a request for payment is required for payment of any postpetition taxes.

In the event the Property is to be sold, all ad valorem tax liens shall attach to the proceeds of such sale to the same extent and with the same priority as such tax liens held prior to closing, and all outstanding ad valorem taxes shall be paid immediately upon closing in accordance with customary closing practices. Any taxes for the 2026 tax year shall become the responsibility of the applicable purchaser with 2026 tax liens retained against the Property until such taxes are paid in full.

**V.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

The Plan places claims and equity interests in various classes and describes the treatment of each Class as set forth below. The Plan also states whether each Class of claims or equity interests is impaired or unimpaired. A claim or equity interest is impaired if the Plan alters the legal, equitable or contractual rights to which the claimants or equity holders are otherwise entitled. If the Plan is confirmed, each creditor's and equity holder's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only creditors holding Allowed Claims may vote. A Class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a Class of equity interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed equity interest holders that actually vote, vote in favor of the Plan. A Class that is not impaired is deemed to accept the Plan.

The claims and equity interests shall be treated as follows under the Plan:

**5.1     Secured Claims – Classes 1-1 through 1-3:**

| **Class #/Claimant** | **Impairment** | **Description and Treatment** |
|---|---|---|
| **Class 1-1 – C2R Secured Debt Fund 1, LP** | Yes | Allowed Claim Amount: $2,455,105.77<br><br>This Claim is secured by a materialman's lien against |

| | | |
|---|---|---|
| | | the Property. Because this Claim is secured by such materialman's lien, as opposed to a promissory note and other documents evidencing a loan, there was no contract that required the Debtor to make prepetition payments, no default related to the Debtor's failure to make regularly scheduled payments, or acceleration of amounts due under a promissory note or other contract. Accordingly, there is nothing to cure with regard to this Claim.<br><br>Debtor filed a Claim Objection to the Proof of Claim filed by C2R Secured Debt. That objection has been resolved, and the Parties have agreed that this Claim shall be allowed and treated as follows:<br><br>Within three business days of the entry of the Confirmation Order, Debtor shall execute a deed in lieu of foreclosure (the "<u>Deed in Lieu</u>") in favor of C2R Funding, and place such deed in lieu in escrow with attorney Tom Howley. C2R shall pay Mr. Howley $6,500 to act as escrow agent. C2R shall be entitled to reimbursement of this amount in full upon the Effective Date, which shall be paid at closing from the proceeds of the sale of the Property pursuant to the PSA.<br><br>C2R Funding shall forbear from causing filing the Deed in Lieu in the applicable real property records until noon on March 16, 2026. If C2R Secured Debt has not been paid in full at that time, Mr. Howley will record the Deed in Lieu, and title to the Property shall be conveyed to C2R Funding free and clear of any and all liens, claims, and encumbrances.<br><br>If payment is made on March 2, 2026, C2R Secured Debt shall be $2,455,105.77. If payment is made earlier, such amount will be reduced by $904.52 per day. If payment is made between March 3 and March 16, 2026, such amount will be increased by $904.52 per day for each day after March 2, 2026.<br><br>Upon confirmation of payment in full, Mr. Howley shall return the Deed in Lieu to counsel for the Reorganized Debtor.<br><br>All Claim Objections related to C2R's Secured |

| | | |
|---|---|---|
| | | Debt's Claim shall be overruled and dismissed with prejudice. Debtor and CR2 Secured Debt agree to mutually release and waive all claims they may have against each other, their principles, and employees that exist on the Effective Date. |
| **Class 1-2 – C2R Secured Funding, LLC** | Yes | Allowed Claim Amount: $180,228.90

This Claim is secured by a Deed of Trust against the Property. This Claim arose from unsolicited advances to pay property taxes. Because there were never any draws on the Construction Loan, there were no prepetition payments due on the Petition Date, and no default under the applicable loan documents. Moreover, the debt comprising this Claim was never accelerated prior to the Petition Date, and no demand for payment was ever made on the Debtor. Accordingly, there is nothing to cure with regard to this Claim.

Debtor filed a Claim Objection to the Proof of Claim filed by C2R Funding. That objection has been resolved, and the Parties have agreed that this Claim shall be allowed and receive the treatment outlined in Class 1-1, except such Claim shall be paid $180,228.90 if the Property is sold on March 2, 2026. If payment is made earlier, such amount will be reduced by $37.60 per day. If payment is made between March 3 and March 16, 2026, such amount will be increased by $37.60 per day for each day after March 2, 2026. |
| **Class 1-3 – City Park Commercial Association, Inc.** | Yes | Claim Amount: $44,912.58

This Claim consists of fees owed to the Association that purportedly run with the Property.

This Claim will be paid $22,460, without interest, on the Effective Date pursuant to the agreement between the Debtor and the Association in full and final satisfaction of such Claim. |

12

5.2     **Unsecured Claims**

| Class #/Claimant | Impairment | Description and Treatment |
|---|---|---|
| **Class 2 – General Unsecured Creditors** | Yes | The claims that make up this class shall be paid a *pro rata* share of any funds available after all Allowed Secured Claims and Allowed Administrative Expense Claims have been paid in full. The claims in this class are not entitled to post-petition interest. |

5.3     **Equity Interest – Class 2**

| Class #/Claimant | Impairment | Description and Treatment |
|---|---|---|
| **Class 3 – Equity Holders** | No | The members of this class will maintain their current ownership interest in the Reorganized Debtor and shall receive a *pro rata* share of the remaining proceeds from the sale of the Property after all Allowed Claims and Allowed Administrative Expense Claims are paid in full. |

5.4     **Voting Procedures** – Classes 1-1, 1-2, and 1-3 are impaired and entitled to vote, and have voted in favor of the Plan. The Debtor, therefore, shall not be required to resolicit creditors to vote on this Plan.

## VI.     ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.1     **Delay of Distribution on Disputed Claim/Escrow** – No distribution will be made on account of a Disputed Claim unless such Claim is allowed by a final order of the Court.

6.2     **Settlement of Disputed Claims** – The Debtor will have the power and authority to settle and compromise a Disputed Claim with Court approval and in compliance with Rule 9019 of the Bankruptcy Rules.

6.3     **Treatment Once Allowed** – If a Disputed Claim is Allowed in accordance with this Plan, it shall receive treatment in accordance with the classes set forth in Article V herein.

## VII.     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

There were no executory contracts and unexpired leases listed on the Debtor' Schedule G [Doc. No. 16]. All other executory contracts to which the Debtor are a party are being rejected upon Confirmation.

## VIII.     MEANS FOR IMPLEMENTATION OF THIS PLAN

The Reorganized Debtor will continue to operate after the occurrence of the Effective Date

for purposes of winding up the Debtor and pursuing any litigation not specifically released pursuant to this Plan. The Plan will be funded from the proceeds of sale of the Property pursuant to the PSA. To the extent that the Effective Date does not occur, C2R shall be entitled to file the Deed in Lieu in the applicable real property records on March 16, 2026, at 12:00 p.m., or such later time as C2R shall determine in its sole and absolute discretion.

The Reorganized Debtor shall provide the US Trustee with report of all distributions made pursuant to the Plan within thirty (30) days of the Effective Date.

## IX.    EFFECT OF CONFIRMATION AND RELEASES

All consideration provided pursuant to this Plan shall be in exchange for and in complete satisfaction and release of all Claims, of any nature whatsoever, against the Debtor and Reorganized Debtor and/or any property of the Debtor, the Reorganized Debtor, or their bankruptcy estates. Notwithstanding the foregoing, the Reorganized Debtor's obligations specifically provided for under this Plan shall not be released and will survive Confirmation. Upon Confirmation, all property of the Debtor and the Reorganized Debtor, whether tangible or intangible, will be free and clear of all Claims, liens, charges, and any other encumbrances, except as provided in the Plan. The provisions of the Plan shall bind all Creditors of the Debtor, even if the Creditor did not accept this Plan. The rights and obligations of any entity affected under this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

## X.    DISCHARGE

Upon Confirmation, the Debtor will be discharged from any debt that arose before Confirmation, subject to the occurrence of the Effective Date, to the extent specified in Section 1141(d) of the Bankruptcy Code.

## XI.    RESERVATION OF RIGHTS

Prior to the Effective Date, no provision of this Plan, nor any statement or provision contained herein, nor the taking of any action with respect to the Plan by the Debtor shall: (i) be

deemed to be an admission against interest; and (ii) or be deemed to be a waiver of any rights which the Debtor might have against a Creditor. If the Effective Date does not occur, neither the Plan nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this Chapter 11 Case.

**ALL CLAIMS AND CAUSES OF ACTION THAT ARE NOT SPECIFICALLY RELEASED UNDER THIS PLAN, INCLUDING, BUT NOT LIMITED TO, CLAIMS FOR THE AVOIDANCE AND RECOVERY OF PRE-PETITION TRANSFERS UNDER CHAPTER 5 OF THE BANKRUPTCY CODE, ARE HEREBY RESERVED TO BE PROSECUTED BY THE REORGANIZED DEBTOR POST-CONFIRMATION.**

## XII.   DEFAULT

Failure to pay all Allowed Claim on the Effective Date shall constitute an event of default as to such Claim. The holder of any Claim may exercise any and all of its contractual and/or legal remedies should the Debtor default under this Plan. The Reorganized Debtor shall retain all of its state law rights and remedies to defend against any action taken by the holder of a Claim after an event of default.

## XIII.   GENERAL PROVISIONS

**13.1**   **Retention of Jurisdiction by the Court** – The Court shall retain jurisdiction of this Chapter 11 Case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan, including adjudicating any adversary proceedings or contested matters related to defaults under the Plan; (ii) to rule on any modification of the Plan proposed under Section 1193 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation to professionals and other Administrative Claims; (iv) to resolve all issues regarding Claims objections, and any issues arising from the assumption/rejection of executory contracts or unexpired leases; and (v) to adjudicate any cause of action which the Debtor may own, including preference and fraudulent transfer causes of action.

**13.2**   **Claims Bar Date** – Claims which are not actually filed by the Claims Bar Date will be forever barred and/or released from assertion against the Debtor, the Reorganized Debtor, or property of their bankruptcy estate, unless the Claim is listed on the Debtor' Schedules and is not listed as disputed, contingent, or unliquidated as to amount and as to which no objection has been filed.

**13.3**   **Corporate Governance** – The Reorganized Debtor shall continue to be governed in accordance with their pre-petition organizational documents.

**13.4**   **Distributions** – If any distribution is returned undeliverable or that remains unclaimed for thirty (30) days following of the Effective Date, such distribution shall be forfeited, and no further distributions to the applicable holder shall be made unless and until the Reorganized Debtor, as distribution agent, is notified in writing of such holder's then-current address.

15

The Claims of such holders of returned and/or unclaimed distributions shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Any funds that are returned to the distribution agent or not timely presented for payment within thirty days following the Effective Date, shall be used by the distribution agent to make additional distributions pursuant to the terms of the Plan.

**13.5** **Post-Confirmation Automatic Stay** – The automatic stay, as provided for under Section 362 of the Bankruptcy Code, will remain in place until the Effective Date.

**13.6** **Effective Date, Substantial Consummation and Final Decree** – The Debtor shall file with the Court a Notice of Occurrence of the Effective Date on the Effective Date, or as soon as practicable thereafter.

Once the Debtor's bankruptcy estate has been fully administered, as provided in Bankruptcy Rule 3022, the Debtor shall file a notice of substantial consummation with the Court along with a motion to obtain a final decree to close the Case. Alternatively, the Court may enter such a final decree on its own motion.

**13.7** **Applicable Law** – Unless a rule of law or procedure is supplied by Federal law, including the Bankruptcy Code or the Bankruptcy Rules, the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**13.8** **Severability** – If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**13.9** **Successors & Assigns** – The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on and shall inure to the benefit or detriment of any heir, executor, successor or assign, officer, manager, director, agent, representative, beneficiary, or guardian, if any, of each entity.

[*Continued to Next Page.*]

## XIV. NOTICES

Notices to the Debtor and Reorganized Debtor may be sent by United States first class mail to:

City Park Storage Ventures, LP
1925 Pearland Parkway
Pearland, TX 77581

With a copy by e-mail to:

Kean Miller LLP
c/o Lloyd A. Lim
711 Louisiana Street
Suite 1800
Houston, Texas 77002
Lloyd.Lim@KeanMiller.com

By: */s/* Paul W. Grohman
Name:
Dated: January 28, 2026

SUBMITTED BY:

KEAN MILLER LLP

By: */s/ Lloyd A. Lim*
Lloyd A. Lim
Texas State Bar No. 24056871
Lloyd.Lim@keanmiller.com
Rachel T. Kubanda
Texas State Bar No. 24093258
Rachel.Kubanda@keanmiller.com
711 Louisiana Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 844-3000
Telecopier: (713) 844-3030